## Case No. 13,445.

STILLMAN et al. v. The BUCKEYE
STATE.

[Newb. 111.] 1

District Court, D. Michigan.　Dec. 8, 1856.

MARITIME LIENS—HOW ENFORCED—LIMITATIONS
—STALE DEMANDS—WAIVER.

1. The maritime lien confers upon material men and seamen, the right to enforce the same by a proceeding in rem. But this right is not without salutary restrictions, arising from, and demanded by, the interests of navigation.

2. The limitations prescribed by the common law do not apply to claims in admiralty without express statutory provisions, yet public policy requires that these liens should not be permitted to lay dormant, to the injury of third parties.

[Cited in The Dubuque, Case No. 4,110; The Rapid Transit, 11 Fed. 335.]

3. No cognizance will be taken of tacit liens, where circumstances are presented, creating justly the presumption that the lien is waived, and that the creditor looks to other security than the vessel.

4. Lapse of time alone is not enough to make a demand stale.

5. The policy of the law is, that a maritime lien should not be protracted beyond a reasonable opportunity for its enforcement.

6. Upon the northwestern lakes, where several voyages are made during the season from one extreme point of the lake to the other. there is great reason to limit these tacit liens to the season of navigation, and not extend them beyond one year, unless there are special circumstances contradicting the prescription which delay creates, especially when the rights of purchasers intervene.

[Cited in The Detroit, Case No. 3,832; The Hercules, Id. 6,400; The J. W. Tucker, 20 Fed. 134.]

7. Where libelants suffer a claim to sleep three years. with repeated opportunities to enforce it, and no excusatory circumstances exhibited, the presumption is strong and conclusive that the lien is waived.

[Cited in The D. M. French, Case No. 3,938; The Dubuque, Id. 4,110; The Artisan, Id. 567; The Bristol, 11 Fed. 103.]

The libelants were proprietors of the Novelty Iron Works, in New York City, and by their agent furnished in 1851, to the steamer Buckeye State at Cleveland, Ohio, where the owners and builders of the boat resided, a portion of the fixtures to the engine. John B. Philips was the owner. She ran through three seasons of navigation from Cleveland and Detroit to Buffalo, a port of the state where the libelants resided. Philips then sold her to S. Gardner, her present claimant, and in his hands she was libeled. The other facts in the case appear in the opinion of the judge.

H. H. Wells, for libelants, cited as to admiralty jurisdiction. Act Cong. Feb. 26, 1845 [5 Stat. 726]; Act Sept. 24, 1789 [1 Stat. 73]; The Genesee Chief, 12 How. [53 U. S.] 443. That contract was made in New York City, and not in Cleveland. see 1 Pars. Cont. 446: 2 Bibb, 280; 4 Wend. 377: 8 Gill, 430; 8 Mart.

1 [Reported by John S. Newberry, Esq.]

[La.] 93; 1 La. 248, 255. That this is not a "stale demand," see Willard v. Dorr [Case No. 17,679]; Ben. Adm. §§ 574, 575; Conk. Adm. 365; The Sarah Ann [Case No. 12,342]; 6 C. Rob. Adm. 48; 8 Jur. 276; Pitman v. Hooper [Case No. 11,186];—a libel sustained after twenty years had elapsed.

Towle, Hunt & Newberry, for respondents. That there is no lien for supplies furnished in home ports. see The General Smith, 4 Wheat. [17 U. S.] 438; Davis v. Child [Case No. 3,-628]; The Nestor [Case No. 10,126]; Harper v. The New Brig [Id. 6,090]; The Marion [Id. 9,087]; 14 Conn. 404; Read v. The Hull of a New Brig [Case No. 11,609]. That the law of Ohio gives no lien, see Scott v. The Plymouth [Id. 12,544]; 1 Mich. 172, 173, 475; 2 Mich. 351; also 11 Ohio, 462; 14 Ohio, 408, 411; 16 Ohio, 178. That this is a "stale demand," The Nestor [supra]; The Mary [Case No. 9,186]; 5 C. Rob. Adm. 102; The Chusan [Case No. 2,717]. As to analogies of mechanics' lien by statute, see Michigan (mechanics' lien), six months; Pennsylvania (13 Serg. & R. 269), six months; Maryland (3 Md. 168), six months: Missouri (15 Mo. 281), six months; California (1 Cal. 183), six months; Mississippi (2 How. [Miss.] 874), three months; Massachusetts (4 Cush. 532), six months; Indiana (5 Blackf. 329; 8 Blackf. 252), sixty days.

WILKINS, District Judge. The steamer Buckeye State was built at Cleveland, Ohio, in the summer of 1850. While in process of construction, and in an unfinished condition, she was sold, in the fall of that year, to one John B. Philips, who had her towed to Buffalo, for the reception of her engine and machinery, which in part was purchased from the complainants, the proprietors of the Novelty Iron Works, the debt for the same being contracted by her then owner, Captain Philips, in the spring of 1851. The respondent Solomon Gardner, purchased the vessel from Philips, in November, 1854, more than three years after the materials had been furnished, and when she had passed through more than three seasons of navigation in the commerce of the northwestern lakes, and without notice of the existence of the lien to enforce which, these proceedings in rem have been instituted. These circumstances are set forth in the answer, and are relied upon by the respondent as exonerating his vessel from liability on the account as "a stale demand."

The maritime lien, which attaches as soon as the debt is contracted, and though unregistered, has the effect of a registered mortgage, confers upon seamen and material men the right of enforcing the payment of the debt by a proceeding in rem, and the sale of the vessel. But such a right, which co-exists with the right to sue in personam, is not without salutary restrictions, arising from and demanded by the interests of navigation. Although the limitations prescribed by the com-

mon law are not applicable to claims in admiralty without express statutory provision, yet public policy requires that these liens should not be permitted to lie dormant, to the injury of third parties purchasing without notice of their existence. The policy of limitations by which the statute law defines the period in which actions are to be brought for the recovery of debt, is based upon the reasonable presumption raised from the circumstance of the lapse of time; that the debt has been paid—a presumption which may always be rebutted by legal proof to the contrary. No such restriction, however, exists in admiralty. Yet the rule has been repeatedly settled, that no cognizance will be taken in favor of these tacit liens, when circumstances are exhibited creating justly the presumption that the lien is waived, and that the creditor looks to other security than the vessel. It is not the lapse of time, merely, which constitutes the demand stale; neither can any rule be safely prescribed as absolute in all cases, as to the period necessary. There may be claims, in regard to which equity would enlarge beyond the time fixed at law as a bar, and certainly, on the other hand, there may intervene circumstances, as strongly raising the presumption, that the lien has been abandoned under a much shorter period than that which the statute indicates in analogous demands.

Seamen's wages, the most favored in admiralty courts, must be prosecuted without delay, and within a reasonable time after the termination of the voyage, or season of navigation, or the advantage of the lien, as security, will be considered as relinquished. And no good reason can be assigned why the lien of the material man, who furnishes his labor, and permits the vessel to depart from port, should be favored by the continuance of his lien, more than the seamen, who accompany the ship and aid in its navigation. Certainly, where the vessel is permitted to continue her voyages throughout the season, repeatedly leaving the home port undisturbed, the presumption is reasonable, that other security had been substituted, or that the creditor relied upon the personal responsibility of the owner. The policy of the law is, that a maritime lien should not be protracted beyond a reasonable opportunity for its enforcement. This species of property is not permanent, is continually periled by the exigencies of navigation, and liable to frequent mutations of title, and therefore the courts will make every intendment against a protracted lien. Especially in the navigation of these northwestern lakes, where several voyages are made during the season, from port to port, traversing every two weeks from one extreme point to the other, there is great reason to limit these tacit liens to the season of navigation, and not extend their obligation beyond a year. In the case of Blaine v. The Carter, 4 Cranch [S U. S.] 332, this principle seems to have been recognized by the supreme court of the United States. The circumstance that the case was one arising on a bottomry bond, does not render the doctrine inapplicable. The voyage of the Carter having been performed, there had been an opportunity on the part of the obligee to enforce his bond. Failing to do so, and the ship making two other voyages, and being sold, the supreme court held, "that the lien continued and had priority during the first voyage, but could extend no further." In what consists the difference between this case and the one at bar? The first is an express lien; this a tacit lien. Why continue the one beyond what is reasonable in the other? If in the commerce of the ocean, the lien cannot with propriety be extended, except under special circumstances, contradicting the presumption which delay creates, beyond the voyage and a return to the home port, where it may be enforced, with equal propriety, should a season of navigation on the lakes, embracing the whole year, be conclusive, especially where the right of a purchaser without notice, has intervened?

In this case, the libelants have suffered their demand to sleep for three seasons of navigation, with repeated opportunities to enforce it on the vessel, and at different ports, without action on their part, and no excusatory circumstances exhibited. The presumption, therefore, is strong and conclusive, that they had waived the lien, and looked alone to the owner for payment. On this point, then, without the consideration of the others, I order the libel to be dismissed, with costs.

[NOTE. Among the records of this case, which were sent to the circuit court on appeal, was a deposition which had not been read in the district court, having come in two days subsequent to the above hearing. A motion was made to suppress the deposition, which was allowed. Case No. 2,085.]